**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| BK TECHNOLOGIES, INC.<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>AT&T MOBILITY, LLC and<br>AT&T SERVICES, INC.<br><br><br>    Defendants/Counterclaimants,<br><br>and<br><br>StreamWIDE Inc.,<br><br>    Intervenor. | Case No.: 2-26-cv-00090-RWS-RSP |

**<u>MOTION TO INTERVENE BY STREAMWIDE, INC.</u>**

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................................ 1

I.      STATEMENT OF FACTS ............................................................................ 2

II.     ARGUMENT ............................................................................................... 3

        A.      SW IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT. .................... 3

                1.      SW's Motion to Intervene Is Timely. .......................................... 4

                2.      SW Has a Significant Interest in the Property and
                        Transactions That Are the Subject of This Litigation................................ 8

                3.      SW's Ability to Protect Its Interests Will Be Impaired If It
                        Cannot Intervene. ...................................................................... 11

                4.      The Defendants Cannot Adequately Represent SW's Interest
                        in Defending Against Plaintiffs' Infringement Allegations....................... 11

        B.      IN THE ALTERNATIVE, SW SHOULD BE PERMITTED TO
                INTERVENE PERMISSIVELY. ......................................................... 12

III.    CONCLUSION.......................................................................................... 14

ii

## TABLE OF AUTHORITIES

Page(s)

**Other Authorities**

*Arquest, Inc. v. Jewel Food Stores, Inc.*,
  2002 WL 1803746 (N.D. Ill., Aug. 6, 2002) ........................................................................ 10

*Brown v. Trinity Indus.*,
  108 Fed. Appx. 898 (5th Cir. Sept. 2, 2004) .......................................................................... 4

*Brumfield v. Dodd*,
  749 F.3d 339 (5th Cir. 2014) .................................................................................................. 4

*Bush v. Viterna*,
  740 F.2d 350 (5th Cir. 1984) ................................................................................................ 12

*Chandler & Price Co. v. Brandtjen & Kluge,
  Inc.*, 296 U.S. 53 (1936) ........................................................................................................ 9

*City of Houston v. Am. Traffic Sols., Inc.*,
  668 F.3d 291 (5th Cir. 2012) .................................................................................................. 4

*Codex Corp. v. Milgo Elec. Corp.*,
  553 F.2d 735 (1st Cir. 1977) ................................................................................................ 11

*Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*,
  1989 WL 237732 (E.D. Tex., Feb. 14, 1989) ....................................................................... 12

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) ................................................................................................ 4, 6

*Engineered Sports Prods. v. Brunswick Corp.*,
  362 F. Supp. 722 (D. Utah 1973) .......................................................................................... 10

*Heaton v. Monogram Credit Card Bank*,
  297 F.3d 416 (5th Cir. 2002) .................................................................................................. 5

*Honeywell Int'l, Inc. v. Audiovox Comm.'s. Corp.*,
  2005 WL 2465898 (D. Del., May 18, 2005) ........................................................................... 9

*Intellectual Ventures I LLC v. AT&T Mobility LLC*, Civ. No. 12-193-LPS, 2014 WL 4445953, at
  *2 (D. Del. Sept. 8, 2014),
  2014 WL 4445953, at *2 (D. Del. Sept. 8, 2014) .................................................................. 8

*International Business Machines, Corp. v. Conner Peripherals, Inc.*,
  1994 WL 706208 (N.D. Cal. 1994) ..................................................................................... 9, 10

*Lemelson v. Larami Corp.*,
  32 Fed. R. Serv. 2d 1133 (S.D.N.Y. 1981) ............................................................................ 9

*Martin v. Travelers Indem. Co.*,
  450 F.2d 542 (5th Cir. 1971) ................................................................................................ 10

*McDonald v. E.J. Lavino Co.*,
  430 F.2d 1065 (5th Cir. 1970) ................................................................................................ 4

*McNeil v. New York Housing Auth.*,
  719 F. Supp. 233 (S.D.N.Y. 1989) ....................................................................................... 12

*Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995) ..................................................................................................... 6

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
  732 F.2d 452 (5th Cir. 1984) .................................................................................................. 4

*Ozee v. American Council on Gift Annuities*, Inc.,
  110 F.3d 1082 (5th Cir. 1997) .................................................................. 5, 6, 8, 12
*Reid v. Gen. Motors Corp.*,
  240 F.R.D. 257 (E.D. Tex. 2006) ...................................................................... passim
*Salem Eng'g v. Nat'l Supply Co.*,
  75 F. Supp. 993 (W.D. Penn. 1948) ........................................................................ 10
*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ...................................................................... 4, 5, 12
*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011) ................................................................................ 7
*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) ........................................................................... 12, 13
*Stauffer v. Brooks Brothers, Inc.*,
  619 F.3d 1321 (Fed. Cir. 2010) ................................................................................ 4
*Stewart-Warner Corp. v. Westinghouse Elec. Corp.*,
  325 F.2d 822 (2d Cir. 1963) ...................................................................................... 9
*Team Worldwide Corp. v. Wal-Mart Stores, Inc.*,
  Civ. No. 17-00235-JRG, 2017 WL 6059303 (E.D. Tex. Dec. 7, 2017) ................... 8
*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) .................................................................................... 4
*Thurmond v. Compaq Computer Corp.*,
  2000 U.S. Dist. LEXIS 20893 (E.D. Tex. June 26, 2000) ....................................... 4
*TiVo Inc. v. AT&T, Inc.*,
  C.A. No. 2:09-CV-259, 2010 WL 10922068 (E.D. Tex. Mar. 31, 2010) ................. 6
*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
  Civ. No. 09-CV-448-JDL, 2010 WL 11488729 (E.D. Tex. May 10, 2010) ......... 7, 13


**2**


Federal Rule of Civil Procedure 24 .................................................................. 1, 3, 4, 5
Rule 24(a) .............................................................................................................. 4
Rule 24(a)(2) ...................................................................................................... 3, 4
Rule 24(b) ............................................................................................................. 12
Rule 24(b)(2) ............................................................................................... 3, 12, 13

Pursuant to Federal Rule of Civil Procedure 24, Intervenor StreamWIDE, Inc. ("SW") hereby moves to intervene in this action as of right or, alternatively, to intervene permissibly. SW seeks to intervene to protect both its interests, and the interests of its customer, named defendant AT&T Services, Inc. ("AT&T" or "Defendant").

## PRELIMINARY STATEMENT

SW seeks leave to intervene in this action for three primary reasons. First, Plaintiff BK Technologies, Inc. ("BKT") has accused SW's technology in this suit by alleging that AT&T's FirstNet Fusion Communication Service ("FirstNet Fusion") infringes its patents. Second, SW has been presented with an indemnity demand by its customer, AT&T, pursuant to a contractual business relationship. Given the high cost of defending this patent case, and the damages sought by BKT, SW must be given the opportunity to protect its sizeable interest in the case firsthand. Third, in attempting to enforce the patents-in-suit, BKT is attempting to claim inventorship to SW's technology.

This patent action squarely implicates SW's technology, its intellectual property rights, and existing contractual relationships with its customers. Although BKT sued AT&T, BKT's infringement allegations are premised on communications functionality designed, invented, implemented, and owned by SW. In addition, BKT further seeks injunctive relief that—unless SW is permitted to participate—would effectively adjudicate SW's rights without SW ever being heard.

Courts in the Fifth Circuit and elsewhere routinely permit manufacturers and developers of software to intervene where, as here, their products form the basis of the infringement allegations and where those entities face potential indemnity exposure. Intervention will not prejudice any party and will promote judicial efficiency by ensuring that the Court hears directly from the entity

1

best positioned to explain the accused technology and the relevant history of its development. If adjudicated without SW's ability to defend and exonerate its technology, this case will jeopardize SW's other clients and future business prospects across the world.

## I.    STATEMENT OF FACTS

BKT commenced this action asserting claims of patent infringement against Defendants AT&T Mobility LLC and AT&T Services, Inc. (collectively, "AT&T") under U.S. Patent Nos. 11,997,568 ("the '568 Patent") and 12,375,890 ("the '890 Patent"), each entitled "System and Method for Managing Access to a Push-to-Talk-Over-Cellular Communication Network." (Compl. ¶¶ 14–16). BKT alleges that AT&T's FirstNet Fusion infringes one or more claims of the asserted patents. (Id. ¶¶ 20–21).

Central to BKT's infringement theory is its allegation that that AT&T has advertised, and continues to advertise, FirstNet Fusion as a platform that "allow[s] first responders to rapidly create customizable talkgroups and channels" across carriers even though AT&T knows that BKT's Push-to-Talk ("POC") "non-subscriber technology was the first communications platform of this kind to enable rapid on-demand group creation with broad membership." (Compl. ¶¶ 24-26). Based on these allegations, BKT seeks damages, enhanced damages for willful infringement, and preliminary and permanent injunctive relief prohibiting continued use of the accused technology. (Id. ¶¶ 34–35, 42–43; Prayer for Relief ¶¶ C–G). Although SW is not named as a defendant, BKT's infringement allegations are expressly tied to the functional operation of the accused technology invented and developed by SW.

SW is a communications software developer that designs and provides real-time communications platforms used by public-safety and enterprise customers worldwide. One of SW's major platforms is Team on the Run ("TOTR"), a comprehensive communications system invented and developed by SW that enables secure group communications. SW customizes its

2

TOTR and tailors it to each customer's specific needs.  And, in early 2022, BKT approached SW seeking customization of SW's then-existing TOTR platform for BKT's commercial use, and they entered into a contract concerning the development and use of this technology. Now, BKT is attempting to claim inventorship rights to SW technology by enforcing these patents against a SW customer, AT&T.

Separately, in 2025, SW entered into a contract with AT&T pursuant to which SW agreed to develop, implement, and support communications software for an AT&T service now known as FirstNet Fusion. This contract included an indemnification agreement whereby SW agreed to defend and indemnify AT&T against claims of patent infringement arising from SW's technology. (*See* Decl. of Michelle Schaap).

BKT's infringement allegations have necessarily placed SW's technology at the center of this litigation. BKT's enforcement of the '568 and '890 Patents and its pursuit of injunctive relief against the accused technology impairs SW's use of its own software and interferes with its obligations to existing customers, including AT&T. SW faces actual and continuing harm unless it is permitted to participate directly in this action to defend its technology, assert its property rights, and seek declaratory relief concerning non-infringement, invalidity, and unenforceability of the asserted patents.

## II.      ARGUMENT

SW is entitled to intervene in this case as a matter of right under Rule 24(a)(2), or in the alternative, the Court should permit SW to intervene pursuant to Rule 24(b)(2). Furthermore, "Rule 24 is aimed at preventing multiple lawsuits when common questions of law or fact are involved." *Reid v. Gen. Motors Corp.*, 240 F.R.D. 257, 258–59 (E.D. Tex. 2006).

### A.      SW Is Entitled to Intervene as a Matter of Right.

3

A movant must be permitted to intervene when the four requirements of Fed. R. Civ. P. 24(a)(2) are met:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc)). Because the issue of intervention is not unique to patent law, Fifth Circuit law controls. *See Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1328 (Fed. Cir. 2010) (denial of intervention reviewed under regional circuit's law). Rule 24 is to be "liberally construed," under Fifth Circuit law. *Texas*, 805 F.3d at 656-57 (quoting *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)). *See also Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)) ("Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)) (internal quotation marks omitted)); *City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 293 (5th Cir. 2012) (noting that intervention as of right "must be measured by a practical rather than technical yardstick.") (quoting *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (en banc)) (internal quotation marks omitted).  Consistently, this Court has found that Rule 24(a) should be "construed broadly, in favor of the applicant[] for intervention." *Thurmond v. Compaq Computer Corp.*, 2000 U.S. Dist. LEXIS 20893, at *4 (E.D. Tex. June 26, 2000) (citing *Edwards v. City of Houston*, 78 F.3d 983, 1004-05 (5th Cir. 1996) (en banc)).

### 1. SW's Motion to Intervene Is Timely.

A court's discretionary determination of whether an application to intervene under Rule 24 is timely depends on the facts and circumstances of each case. *See Brown v. Trinity Indus.*, 108

4

Fed. Appx. 898, 899 (5th Cir. Sept. 2, 2004). In the Fifth Circuit, four factors are used to consider the timeliness of a motion to intervene:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case it sought to intervene; (2) the prejudice that existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) whether unusual circumstances militate for or against a determination that the application is timely.

*Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 422-23 (5th Cir. 2002). The Fifth Circuit also notes that a "district court should apply a more lenient standard of timeliness if the would-be intervenor qualifies for intervention under section (a) of Rule 24 than if he qualified under section (b)." *Ozee v. American Council on Gift Annuities*, Inc., 110 F.3d 1082, 1095 (5th Cir. 1997). Notably, the Fifth Circuit discourages a party from rushing to intervene. *See Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) ("Courts should discourage premature intervention that wastes judicial resources."). An analysis of these factors demonstrates the timeliness of SW's motion to intervene.

With respect to the timeliness factor, SW seeks to intervene six months after BKT commenced this lawsuit and just a few weeks following AT&T's filing of its Answer and Counterclaims. BKT just recently filed its Answer to AT&T's Counterclaims. (*See* ECF No. 15). The patents in suit relate to SW's POC technology and agreements SW has with BKT and separately with AT&T for software development, implementation, and maintenance. In this instance, BKT alleges that AT&T's provision of FirstNet Fusion infringed the '568 and '890 Patents, thus accusing SW's technology. After receiving Plaintiff's complaint, SW diligently investigated BKT's claims and filed this motion without undue delay. Its timeliness is accordingly reasonable. *See Reid*, 240 F.R.D. at 260 (finding the software developer's motion to intervene timely after contentions had been filed and a scheduling order issued); *Ericsson Inc. v. D-Link*

*Sys., Inc.*, No. 6:10-cv-473 (E.D. Tex. May 4, 2012), Dkt. No. 205 (granting Intel's partially opposed motion to intervene filed five months after the scheduling conference took place and nearly one year into the case); *Edwards*, 78 F.3d at 1000-01 (citing Fifth Circuit intervention cases finding delays as long as five months were not unreasonable); *Ozee*, 110 F.3d at 1095-96 (delay of approximately six months was not unreasonable).

As for the second timeliness factor, SW's motion to intervene does not prejudice any party primarily because this suit is in its early stage. *See Reid*, 240 F.R.D. at 260; *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 370 (3d Cir. 1995) ("[T]he stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved."). *See also TiVo Inc. v. AT&T, Inc.*, C.A. No. 2:09-CV-259, 2010 WL 10922068, at *18 (E.D. Tex. Mar. 31, 2010) (a motion to intervene was timely where nearly five months elapsed between filing of complaint and motion to intervene, and "the Court ha[d] not held a scheduling conference nor issued a scheduling order"); *Edwards*, 78 F.3d at 1001 ("[M]ost of [the Fifth Circuit's] case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation").

There has been no initial conference with the Court, no contentions filed, no discovery order entered, and no *Markman* hearing scheduled, much less a trial date. Notably, BKT just recently filed its Answer to AT&T's Counterclaims. (*See* ECF No. 15). Further, given the fact that SW designed, developed, implemented, and maintains the technology at issue use by both BKT and AT&T, it necessarily has unique knowledge as to the internal workings and capabilities of the technology. Allowing SW to participate in the case will benefit, not prejudice, the existing parties' attempts to accurately understand SW's technology.

6

The third timeliness factor weighs heavily in favor of intervention as well. SW will suffer substantial prejudice if it is not allowed to intervene and defend and protect its POC technology. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, Civ. No. 09-CV-448-JDL, 2010 WL 11488729, at *2 (E.D. Tex. May 10, 2010) ("Courts have held that beyond the injury that might arise from having to indemnify customers, a manufacturer such as [the Intervenor] faces the loss of its customer base and reputation as a result of patent infringement allegations."); *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (explaining that the manufacturer is the "true defendant" as it is "presumed to have a greater interest in defending its actions against charges of patent infringement" and noting that it "must protect its customers, either a matter of contract, or good business, in order to avoid the damaging impact of an adverse ruling against it product") (citations omitted). If SW is not permitted to intervene, SW will be unable to properly participate in and represent its interests in claim construction, fact development, and ultimately trial. Not only has BKT alleged that FirstNet Fusion (SW's technology) infringes the '568 and '890 Patents, it is also attempting to claim inventorship to SW's POC technology by enforcing these patents. Given SW's global presence as the premier software developer in communication platforms, an adverse ruling would significantly threaten SW's relationships with existing and future customers. Accordingly, SW would suffer great prejudice if it were not allowed to refute BKT's allegations.

With regard to the fourth timeliness factor, Plaintiff and AT&T's use of technology invented, developed, implemented and maintained by SW militate in favor of finding this application timely. Plaintiff's suit against AT&T instead of SW (despite knowing SW developed and implemented FirstNet Fusion) and enforcement of patents that SW's employees designed and developed renders this case unusual. As noted above, SW is in the best position to explain firsthand

7

its POC technology as it is intimately knowledgeable about the internal workings of its technology. Further, Plaintiff's enforcement of the patents-in-suit has left SW with no option but to intervene to defend its property, its customers, and its contractual rights.

### 2.   SW Has a Significant Interest in the Property and Transactions That Are the Subject of This Litigation.

A party is entitled to intervene in an action when it has a "direct, substantial, legally protectable interest in the proceedings." *Ozee*, 110 F.3d at 1096. Here, SW has at least two distinct interests to protect. First, as developer of the POC technology at issue, SW has an interest in litigating its own technology. Second, as the supplier of FirstNet Fusion to AT&T and potential indemnitor of AT&T in this case, SW has a strong interest in ensuring that the merits of the action are fully and vigorously litigated.

### (a)   *SW Has a Strong Interest in Determining Whether or FirstNet Fusion Infringes the '568 and '890 Patents.*

Plaintiff's infringement allegations against AT&T specifically implicate SW's POC technology. Plaintiff alleges that AT&T has advertised, and continues to advertise, FirstNet Fusion as a platform that "allow[s] first responders to rapidly create customizable talkgroups and channels" across carriers even though AT&T knows that BKT's POC "non-subscriber technology was the first communications platform of this kind to enable rapid on-demand group creation with broad membership." (Compl. ¶¶ 24-26).

In this instance, SW developed FirstNet Fusion for AT&T Fusion, and courts routinely allow intervention by developers and manufacturers. *See, e.g.*, *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, Civ. No. 17-00235-JRG, 2017 WL 6059303, at *13 (E.D. Tex. Dec. 7, 2017) (finding an intervening manufacturer had an interest in "the ongoing sale and distribution of their products [which] is put at risk by [the Plaintiff's] allegations of infringement."); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, Civ. No. 12-193-LPS, 2014 WL 4445953, at *2 (D. Del.

8

Sept. 8, 2014) ("[In a patent infringement action,] intervention is necessary to enable Intervenors to protect their interest in products which Intervenors manufacture for Defendants, an interest put at risk by the litigation as Plaintiffs accuse these products of infringement."); *International Business Machines, Corp. v. Conner Peripherals, Inc.*, 1994 WL 706208, *5 (N.D. Cal. 1994) ("To the extent [manufacturer] Adaptec's products are implicated by IBM's infringement claims, Adaptec has a direct interest in the subject matter of the action. Adaptec played an important role in manufacturing and designing the controllers that allegedly infringed IBM and Western Digital's products. . . . Adaptec, as the designer of the subject controllers should be able to present facts relevant to whether the controllers actually did infringe the IBM and Western Digital products before the court"); *Lemelson v. Larami Corp.*, 32 Fed. R. Serv. 2d 1133, 1134 (S.D.N.Y. 1981) (permitting intervention by manufacturer/vendor in suit against its customer where the two intended to defend on the basis of patent invalidity and the manufacturer was obligated by prior agreement to indemnify the customer); *see also Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 U.S. 53, 55 (1936) (holding that a manufacturer's intervention in a patent infringement action against its customers was "necessary for the protection of its interest"); *Stewart-Warner Corp. v. Westinghouse Elec. Corp.*, 325 F.2d 822, 826 (2d Cir. 1963) (holding there was "no doubt of the propriety of [a party's] intervention" as the manufacturer and vendor to defendants of equipment accused of infringement).

Further, public policy favors the rule that litigation for the purpose of ascertaining and sustaining alleged rights of a patentee should involve the manufacturer of the accused technology, rather than the manufacturer's customers. *See Honeywell Int'l, Inc. v. Audiovox Comm.'s. Corp.*, 2005 WL 2465898, *3 (D. Del., May 18, 2005) (stating that "[i]t is impracticable to try an infringement case against 40 some defendants or third-party defendants with many different

accused devices, and it is unwise to attempt any such thing when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and when at least some of the manufacturers of the LCDs are before the court and are willing to stand behind their products in this litigation."); *see also International Business Machines*, 1994 WL 706208 at *5; *Arquest, Inc. v. Jewel Food Stores, Inc.*, 2002 WL 1803746, *2 (N.D. Ill., Aug. 6, 2002) ("the manufacturer of an allegedly infringing device is the real party in interest in a lawsuit against a mere customer.") (internal citation omitted); *Engineered Sports Prods. v. Brunswick Corp.*, 362 F. Supp. 722, 729 (D. Utah 1973); *Salem Eng'g v. Nat'l Supply Co.*, 75 F. Supp. 993, 999-1000 (W.D. Penn. 1948).

SW has a direct, substantial, and legally protectable interest in this action because it designed, invented, and implemented the technology at issue—both the patented technology and FirstNet Fusion. An adverse ruling regarding infringement in this case would not only impair SW's business relationship with AT&T but also jeopardize its business and contractual relationship with its other customers worldwide. Moreover, any adverse rulings of the Court in this case will carry weight with courts hearing similar issues in subsequent cases involving SW's POC technology.

(b) *SW Has a Direct, Substantial and Legally Protectable Interest in Ensuring that Any Indemnification of Its Customers Is Well-Founded.*

SW stands behind its technology. SW entered into indemnification agreement with AT&T as it pertains to FirstNet Fusion. After BKT commenced this action, AT&T requested indemnification from SW for the patent infringement claims asserted by BKT against AT&T. SW accepted its indemnification obligation. This legal (contractual) interest provides separate and ample grounds for SW's intervention. *See Reid*, 240 F.R.D. at 259 (permitting intervention where Microsoft was presented with an indemnity demand by one of the defendants in a patent infringement action implicating Microsoft's technology); *Martin v. Travelers Indem. Co.*, 450 F.2d

10

542 (5th Cir. 1971) (holding that the driver of a vehicle in a personal injury case, who was an employee of the vehicle owner and who claimed insured status under the owner's insurance contract, had an obvious interest under Rule 24(a), since he had an interest in seeking to avoid paying a judgment).

### 3. SW's Ability to Protect Its Interests Will Be Impaired If It Cannot Intervene.

"[I]t is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 738 (1st Cir. 1977). SW should not be forced to take a piecemeal approach to its defense of its technology and customers. If SW is not allowed to intervene, it will be defenseless in protecting AT&T and other customers against an adverse judgement implicating SW's POC technology. In that case, SW may need to defend infringement lawsuits by Plaintiff against other SW customers using such technology. Thus, as a matter of preserving the resources of both the courts and the parties, SW is in the best position to protect its intellectual property rights as well as its customers.

### 4. The Defendants Cannot Adequately Represent SW's Interest in Defending Against Plaintiffs' Infringement Allegations.

SW should be allowed to intervene because the present Defendants cannot adequately represent SW's interests. Because the product SW developed is the actual accused instrumentality, SW has the greatest interest in defending the infringement claim and possesses the most critical technical knowledge needed to do so. Defendant AT&T cannot vigorously defend the infringement allegations because it does not have the same depth of knowledge and understanding as SW does with respect to FirstNet Fusion. Moreover, SW also developed the POC technology BKT improperly patented and continues to use. No other party has as much knowledge about SW's POC technology. The requirement of showing inadequate representation of interests is satisfied when

11

the movant shows that its interests might be inadequately represented by the existing parties to the suit. *Sierra Club*, 18 F.3d at 1207. The burden of making such a showing is minimal. *See id.* ("The applicant has the burden of demonstrating inadequate representation, but this burden is 'minimal.' The applicant need only show that representation 'may be' inadequate."); *see also Ozee*, 110 F.3d at 1096.

Notably, while SW and AT&T share an interest in defending against Plaintiff's allegations of infringement, the adverse impact of failing to vigorously defend SW's intellectual property rights is significantly less on AT&T than it is on SW. That is, AT&T can discontinue its use of SW's technology. In contrast, SW's interests lie with protecting all of its current and potential customers worldwide because its POC technology is at issue in this case. Thus, no entity has a greater interest in proving the invalidity of the '568 and '890 Patents, or alternatively its non-infringement, than SW itself. *See Bush v. Viterna*, 740 F.2d 350, 357 (5th Cir. 1984) (finding intervention as of right allowed when intervenors may potentially make a "more vigorous presentation" of their interests than existing parties).

### B.    In the Alternative, SW Should Be Permitted To Intervene Permissively.

Rule 24(b)(2) is construed liberally and permits intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977); *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 1989 WL 237732, *4 (E.D. Tex., Feb. 14, 1989) (allowing permissive intervention, Judge Fisher stated that "Rule 24(b) 'plainly dispenses with any requirement that the intervenor [shall] have a direct, personal or pecuniary interest in the subject of the litigation.'") (alteration in original). The rule may be satisfied where a common question of law or fact is involved despite the existence of factual differences between the parties. *See McNeil v. New York Housing Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989).

12

In the Fifth Circuit, permissive intervention is a two-stage process. The district court must first "decide whether 'the applicant's claim or defense and the main action have a question of law or fact in common.' If this threshold requirement is met, the district court must exercise its discretion in deciding whether intervention should be allowed." *Stallworth*, 558 F.2d at 269 (quoting Fed. R. Civ. P. 24(b)(2)). *See Reid*, 240 F.R.D. at 259 (finding common questions of law and fact where "Microsoft's software [was] a substantial part of an allegedly infringing system operated by defendant Haliburton," and "Microsoft's claims of invalidity and unenforceability raise[d] the same questions of law and fact as similar claims by Defendants because they are all asserted against the '120 patent.").

Here, there are numerous questions of law and fact common to both the existing action and those involved in SW's counterclaims. The common factual and legal issues include: (1) discovery of the patentee and of SW's POC technology, including FirstNet Fusion; (2) construction of the disputed terms in the '568 and '890 Patents; (3) whether any of the claims asserted in the '568 and '890 Patents are valid; and (4) whether FirstNet Fusion and SW's POC products infringe any claim of the '568 and '890 Patents. Based on these commonalities, SW's substantial interest in this matter, and the lack of any prejudice imposed on any of the existing parties, the Court should exercise its discretion to allow SW to intervene permissively under Rule 24(b)(2) even if the Court determines that SW is not entitled to intervene as of right. *See U.S. Ethernet*, 2010 WL 11488729, at *2 (finding permissive intervention warranted because indemnification "establishes a legal relationship that traditionally warrants declaratory jurisdiction in a dispute between the manufacturer and a patentee who has threatened or brought suit against the manufacturer's customers").

13

## III.    CONCLUSION

For the foregoing reasons, the Court should grant SW's leave to intervene as a matter of right or, alternatively, leave to intervene permissively.


May 6, 2026                                    Respectfully Submitted

                                              By: /s/ Joseph V. Saphia

                                              Deron R. Dacus
                                              THE DACUS FIRM
                                              821 ESE Loop 323
                                              Suite 430
                                              Tyler, TX 75701
                                              T: 903.705.1117

                                              Joseph V. Saphia
                                              Jessica H. Zafonte
                                              Patricia B. Bergamasco
                                              CHIESA SHAHINIAN & GIANTOMASI PC
                                              11 Times Square, 34th Floor
                                              New York, N.Y. 10036
                                              T: 212.324.7262
                                              jsaphia@csglaw.com
                                              jzafonte@csglaw.com
                                              pbergamasco@csglaw.com

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on this 6th day of May 2026, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5.  Any other counsel of record will be served by a facsimile transmission and/or first-class mail.

*/s/ Joseph V. Saphia*

Joseph V. Saphia

15

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that, on the 5th day of May 2026, counsel for Streamwide Inc. ("Streamwide") met and conferred with counsel for Plaintiff BK Technologies, Inc. ("BKT"), Barry Herman, Esq., via a Zoom video conference concerning Streamwide's Motion to Intervene. Counsel for Streamwide explained the basis for the motion during the conference, and counsel for BKT is opposed to the relief requested herein. The parties were unable to reach an agreement and concluded, in good faith, that discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve. The parties have complied with the meet and confer requirement in Local Rule CV-7(h).

*/s/ Joseph V. Saphia*

Joseph V. Saphia

16